IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **JOHNSON ASSOCIATES CORPORATION** ) | |
| ) | |
| and ) | |
| ) | |
| **T. CHANTAL INTERNATIONAL LIMITED,** ) | |
| ) | **Civil Action No. 3-09-1206** |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | |
| ) | |
| **HL OPERATING CORP., D/B/A/** ) | |
| ) | |
| **Defendant.** ) | |

## ANSWER & COUNTERCLAIM

HL Operating Corp., D/B/A Hartmann ("Hartmann") responds to the numbered paragraphs of the Complaint as follows:

## JURISDICTION AND VENUE

1. Hartmann denies the allegations of Paragraph 1 of the Complaint.

2. Hartmann lacks sufficient information to admit or deny the allegations in Paragraph 2 of the Complaint and therefore denies same.

3. Hartmann lacks sufficient information to admit or deny the allegations in Paragraph 3 of the Complaint and therefore denies same.

4. Hartman admits the allegations in Paragraph 4 of the Complaint.

5. Hartmann admits the allegations in Paragraph 5 of the Complaint.

6. Hartmann admits the allegations in Paragraph 6 of the Complaint.

## FACTS

7. Hartmann admits that it executed the Sourcing Agreement attached as <u>Exhibit A</u> to the Complaint, which document speaks for itself. Hartmann denies the remaining allegations of Paragraph 7 of the Complaint.

8. Hartmann admits that it placed orders with Plaintiffs and received shipments of product from Plaintiffs, as well as invoices. Hartmann denies all remaining allegations contained in Paragraph 8 of the Complaint.

9. Paragraph 9 of the Complaint does not require a response from Hartmann because the Sourcing Agreement attached as <u>Exhibit A</u> to the Complaint speaks for itself.

10. Hartmann denies the allegations contained in Paragraph 10 of the Complaint.

11. Hartmann denies the allegations contained in Paragraph 11 of the Complaint and states that <u>Exhibit B</u> speaks for itself.

12. Hartmann denies the allegations contained in Paragraph 12 of the Complaint and states that <u>Exhibit C</u> speaks for itself.

## COUNT I

### BREACH OF CONTRACT

13. Hartmann restates, realleges and incorporates by reference its answers to the allegations in numerical paragraphs 1 through 12 of the Complaint as if fully set forth in this paragraph.

14. Hartman admits the allegations in Paragraph 14 of the Complaint.

15. Hartmann denies the allegations contained in Paragraph 15 of the Complaint.

16. Hartmann denies the allegations contained in Paragraph 16 of the Complaint.

17. Hartmann denies the allegations contained in Paragraph 17 of the Complaint.

## COUNT II

## UNJUST ENRICHMENT

18. Hartmann restates, realleges and incorporates by reference its answers to the allegations in numerical paragraphs 1 through 17 of the Complaint.

19. Hartmann denies the allegations contained in Paragraph 19 of the Complaint.

20. Hartman admits the allegations in Paragraph 20 of the Complaint.

21. Hartman admits the allegations in Paragraph 21 of the Complaint.

22. Hartmann denies the allegations contained in Paragraph 22 of the Complaint.

23. The allegations contained in Paragraph 23 of the Complaint are legal conclusions to which no response is required. To the extent a response is required, Hartmann denies these allegations.

24. Hartmann denies the allegations contained in Paragraph 24 of the Complaint.

## GENERAL DENIAL

25. Hartmann denies that Plaintiffs are entitled to any of the relief they seek in their Prayer for Relief and asks that the Complaint be dismissed with costs assessed against Plaintiffs. Any and all allegations not specifically admitted above are here and now denied.

## AFFIRMATIVE DEFENSES

### First Defense

The Complaint fails to state a claim against Hartmann upon which relief can be granted.

## Second Defense

Each and every claim against Hartmann, in whole or in part, is barred by the doctrines of good faith and fair dealing, unclean hands, accord and satisfaction, waiver, laches and/or estoppel.

## Third Defense

The Complaint fails to state a claim, in whole or in part, because, to the extent it claims to have suffered any injury, such injury, if any, was not caused by Hartmann, but by others—including Plaintiffs.

## Fourth Defense

Plaintiffs' claims are barred, in whole or in part, because any acts or practices of Hartmann that are the subject of the Complaint were performed in accordance with the usual course of dealing between the parties.

## Fifth Defense

Plaintiffs' alleged damages were not reasonably foreseeable.

## Sixth Defense

To the extent that Hartmann engaged in any of the conduct alleged in the Complaint, the conduct was reasonable, justified, and/or in pursuit of lawful and legitimate business concerns.

## Seventh Defense

Plaintiffs have failed to mitigate or minimize their alleged damages, if any, and took and/or failed to take action that increased or caused their alleged damages.

## Eighth Defense

Hartmann cannot be liable to a party for a breach of contract to the extent that an entity was not a party to the contract.

### Ninth Defense

Hartmann asserts that it is not liable to Plaintiffs for the equitable claim of unjust enrichment because Plaintiffs have no right to seek equity under the facts and circumstances of this case. Plaintiffs provided defective and shoddy products to Hartmann, which caused Hartmann significant damage in excess of the alleged damages sought by Plaintiffs.

### Tenth Defense

Hartmann hereby gives notice that it intends to rely upon such other affirmative defenses that may become available or apparent during the course of discovery, and thus, reserve the right to amend this Answer, file further pleadings and assert additional defenses.

### HARTMANN'S COUNTERCLAIMS AGAINST PLAINTIFFS

Hartmann, having fully answered the Complaint, assumes the role of Counterclaimant and alleges:

1. Hartmann is a Delaware corporation with its principal place of business in Lebanon, Tennessee.

2. For over 100 years, Hartmann has been engaged in the business of manufacturing and selling high-quality luxury luggage and travel goods. For many years, Hartmann has maintained an excellent reputation among the public and the trade. It is critical to Hartmann's business for it to maintain its goodwill and reputation with the public and its customers for quality manufactured goods.

3. On information and belief, and as alleged by Plaintiffs in this action, Johnson Associates Corporation ("Johnson") is a company organized and existing under the laws of the

Republic of China and has its principal place of business at 2FL., No 162 Songjiang Road, Taipei, Taiwan.

4. On information and belief, and as alleged by Plaintiffs in the Complaint, Johnson and T. Chantal International Limited ("TC") are engaged in the business of manufacturing luggage and leather products.

5. On or about July 6, 2007, Hartmann and Johnson entered into a Sourcing Agreement, a copy of which is attached as <u>Exhibit A</u> to the Complaint. Under the Sourcing Agreement, Johnson was to be the non-exclusive manufacturer of Hartmann's luggage and leather goods. Upon information and belief, Johnson delegated to TC the responsibility for performing the terms of the Sourcing Agreement with Hartmann.

6. After the parties executed the Sourcing Agreement, Johnson/TC began manufacturing Hartmann's two most important collections of luggage—Wings and Tweed. These two collections are among Hartmann's top selling lines and represent a significant portion of Hartmann's total sales.

7. In order to maintain its quality standards as a seller of high-end luggage, the Sourcing Agreement contains very specific provisions relating to the quality of the goods that Johnson was to manufacture for Hartmann. Johnson/TC knew that performance of the Sourcing Agreement, including but not limited to quality standards, was crucial to Hartmann's business success.

8. From the first shipment that Hartmann received from Johnson/TC at the end of 2007, Johnson/TC consistently failed to meet the quality standards as set forth in the Sourcing Agreement. In fact, Hartmann found that it regularly had to reject or rework approximately 30% of the goods that Johnson/TC shipped to Hartmann. In some months, that percentage was over

70%. A small sampling of photographs of poor quality work by Johnson/TC is attached hereto as <u>Exhibit 1</u>.

9. To help Johnson/TC overcome its significant production quality issues, Hartmann was in regular communication with Johnson/TC to try to address and correct these manufacturing problems. Hartmann also made numerous additional trips at significant expense to China to meet with representatives of Johnson/TC to try to improve the quality of their work and lower the rejection rate.

10. The poor quality of Johnson/TC's work placed Hartmann in a difficult position. Each time that Hartmann had to reject or rework a piece it received from Johnson/TC, that was one less bag that could meet customer demands in a timely fashion. As Hartmann had to reject or rework more and more product over time, the demand for the product began to outweigh its supply, and Hartmann's customers became dissatisfied with Hartmann's lack of product. Hartmann also had an increase in complaints and returns from consumers due to Johnson/TC's poor quality.

11. During the summer of 2008, Hartmann realized that Johnson's manufacturing quality would likely never improve—despite all of Hartmann's significant efforts. Accordingly, Hartmann began the process of securing an alternative manufacturer for the Tweed and Wings collections.

12. The process of locating and preparing an alternative manufacturer took a substantial amount of time and expense. Even though Hartmann began discussions with an alternative manufacturing company during the summer of 2008, it took over a year before the first shipment of Tweed and Wings were actually received from this alternative manufacturer.

13. During this transition time, it was essential that Hartmann try to maintain its relationship with Johnson/TC and salvage as much product as possible so that it would have at least some Tweed and Wings product to deliver to its customers.

14. As a result of Johnson/TC's inability to meet the Sourcing Agreement's specifications for the quality of the product, Hartmann lost goodwill and experienced lost sales, lost profits and reduced revenues.

## BREACH OF CONTRACT

17. Hartmann re-alleges each and every allegation set forth above and reincorporates them by reference as if fully set forth in this paragraph.

18. Johnson and Hartmann entered into a valid and enforceable contract.

19. Hartmann fully performed under the parties' contract.

20. Johnson breached the parties' contract by failing to comply with its terms and conditions.

21. Hartmann suffered significant damages as a result of Johnson's breach, including but not limited to, loss of customer goodwill, lost sales, increased production costs, lost profits, as well as the expense of securing an alternate manufacturer.

22. Hartmann's damages as a result of Johnson/TC's breach are in excess of $2,000,000.

## PRAYER FOR RELIEF

Wherefore, in view of the foregoing, Hartmann demands the following relief:

(a) Dismissal of Plaintiffs' Complaint with costs assessed against Plaintiff;

(b) Judgment in favor of Hartmann for damages for breach of contract, as set forth herein, in an amount to be determined at trial;

(c) Pre- and post-judgment interest, and any and all other and further relief to which he may be entitled after the trial of this cause.

(d) For such other relief as this Court deems just and proper.

Respectfully submitted,

/s Kathryn Walker
Samuel L. Felker
Kathryn Hannen Walker
Bass, Berry & Sims, PLC
150 3rd Avenue South
Suite 2800
Nashville, TN 37201
(615) 742-6200 (phone)
(615) 742-2844 (fax)

*Counsel for Hartmann*

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of February, 2010, the foregoing document was filed and submitted electronically. Notice of this filing will be sent electronically by operation of the Court's electronic filing system to all parties indicated below:

Dianna Baker Shew
Stites & Harbison, PLLC
401 Commerce Street, Suite 800
Nashville, TN 37219

/Kathryn Walker

8431353.5