**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **JOHNSON ASSOCIATES CORPORATION** | ) | |
| And T. CHANTAL INTERNATIONAL, | ) | |
| LIMITED, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | **No. 3:09-cv-01206** |
| v. | ) | **Judge Nixon** |
| | ) | **Magistrate Judge Knowles** |
| **HL OPERATING CORP., D/B/A HARTMANN,** | ) | |
| | ) | |
| | ) | |
| *Defendant.* | ) | |

## <u>ORDER</u>

Pending before the Court is Defendant HL Operating Corp., d/b/a Hartmann′s

("Defendant") Motion to Dismiss or, in the Alternative, Stay the Litigation and Compel

Arbitration (Doc. No. 24) ("Motion") and Memorandum in Support (Doc. No. 25). Plaintiffs

Johnson Associates and T. Chantal International, Limited ("Johnson" or "Plaintiffs") filed a

Response in Opposition (Doc. No. 27). Defendant then filed Motion for Leave to File a Reply

(Doc. No. 29), which the Court now **GRANTS**, and Proposed Reply (Doc. No. 29-1).

Subsequently, at the Court's request, Plaintiffs filed a Sur-Reply (Doc. No. 41).

For the reasons stated below, Defendant's Motion is **DENIED**.

### I. BACKGROUND

This case pertains to a July 6, 2007 Sourcing Agreement entered into by Johnson and

Hartmann under which Johnson was to manufacture Hartmann-branded luggage and leather

products. Plaintiff Johnson is a company organized and existing under the laws of the Republic

of China, and its primary place of business is Taipei, Taiwan. Defendant Hartmann is a Delaware

corporation whose principal place of business is in Lebanon, Tennessee. Johnson alleged that

Hartmann breached the Sourcing Agreement in an action in this Court brought on December 22,

2009. Plaintiffs assert that the Sourcing Agreement is valid and enforceable, and seek damages

under the contract.[1]

On August 25, 2010, Hartmann filed this Motion asking that the case be dismissed or, in

the alternative, stayed pending arbitration pursuant to a clause in the Sourcing Agreement. (Doc.

No. 24.) In relevant part, Paragraph 13(a) of the Sourcing Agreement states that:

> . . . if Hartmann so elects, any dispute, controversy or claim arising out of our relating to
> this Agreement shall be settled by arbitration in Hong Kong under the UNCITRAL
> Arbitration Rules in accordance with the Hong Kong International Arbitration Centre
> Procedures for the Administration of International Arbitration in force as of the date of
> this Agreement.

(Doc. No. 1-1, Ex. A.)

Between the filing of this case and the filing of the Motion in question—then a period of

about eight months, now about eleven—the parties proceeded to litigate the case. Hartmann

moved for and was granted an extension of time to answer the Complaint, which it did on

February 26, 2010 (Doc. No. 9), asserting ten affirmative defenses (not including the right to

arbitrate or a lack of jurisdiction or venue) and a counterclaim against all plaintiffs. Hartmann

negotiated a Case Management Order proposed by the parties on the same date as the Answer

was filed (Doc. No. 11), and later moved for a modification of that order individually on July 1,

2010 (Doc. No. 19) and with Plaintiffs on August 10, 2010 (Doc. No. 22). The parties engaged

in a judicial settlement conference as well as extended settlement discussions, all unsuccessful.

(Doc. No. 25 at 2.)

---

[1] The facts above are drawn from the Complaint (Doc. No. 1).

As of the date of the Motion, Hartmann asserted that the parties had served written discovery requests, deposition notices, and subpoenas, but that no discovery responses had been exchanged and no depositions had been taken. *Id.* However, the day following the filing of this Motion, August 26, 2010, was the day on which discovery responses were due per the Case Management Order. In response to Hartmann's requests, Plaintiffs, who had learned of Defendant's intent to file this Motion on August 23, 2010, had prepared ten pleadings containing their written responses, and had gathered and provided to Hartmann 1151 pages of responsive documents in electronic formats. (Doc. No. 27 at 2.) Hartmann asserts that it informed Plaintiffs it would not provide substantive discovery responses and invited them to do the same during the pendency of the Motion. (Doc. No. 29-1 at 6.)

Subsequently, the Court ordered oral argument in this matter on November 3, 2010, setting the hearing date for November 18, 2010. At the hearing, the Court requested that Plaintiffs file additional argument in writing pertaining to certain Sixth Circuit precedents. In addition to responding to the Court's request, Plaintiffs indicate in their Sur-Reply that subsequent to the filing of the Motion, the parties continued to engage in discovery, in that four depositions had been taken by November 18, 2010, and that further depositions were scheduled for the coming weeks. (Doc. No. 41 at 4.)

## II. ANALYSIS

Defendant's initial line of argument focused on the validity and scope of the arbitration clause contained in the Sourcing Agreement (Doc. No. 25), and Plaintiffs' Response did not challenge that the arbitration clause would be applicable to the dispute in question; rather, it raised the issue of whether Defendant could assert the right to arbitrate at this time (Doc. No.

27).[2]  Thus, the issue before the Court is whether Hartmann may invoke the right to arbitrate,

such that this case must be dismissed or stayed pending arbitration, or if that right has been

waived and the case must be allowed to proceed.  In general, there is a "strong presumption in

favor of arbitration and waiver of the right to arbitration is not to be lightly inferred."  *Gordon v.*

*Dadante*, 294 F. App'x 235 (6th Cir. 2008) (quoting *O.J. Distrib., Inc.*, 340 F.3d at 355-56).

However, the parties appear to agree that the proper inquiry to assess whether waiver has

occurred considers whether a party has (1) engaged in conduct completely inconsistent with

reliance on an arbitration agreement, and (2) "has delayed its assertion [of the right to arbitrate]

to such an extent that the opposing party incurs actual prejudice."  *O.J. Distrib., Inc. v. Hornell*

*Brewing Co.*, 340 F.3d 345, 356 (6th Cir. 2003).

## A.  Reliance on the Arbitration Agreement

The Sixth Circuit has held that a party may waive its right to arbitrate when its actions are

"completely inconsistent with any reliance thereon."  *Gen. Star Nat'l Ins. Co. v. Administratia*

*Asigurarilor de Stat*, 289 F.3d 434, 438 (6th Cir. 2002) (quoting *Germany v. River Terminal Ry.*

*Co.*, 477 F.2d 546, 547 (6th Cir. 1973) (per curiam)).  In a recent case, *Manasher v. NECC*

*Telecom*, 310 F. App'x 804, 806 (6th Cir. 2009), the Circuit Court held that a defendant waived

the right to arbitrate "by failing to plead arbitration as an affirmative defense and by actively

participating in litigation for almost a year without asserting that it had a right to arbitration."

*See also Hurley v. Deutsche Bank Trust Company Americas*, 610 F.3d 334 (6th Cir. 2010)

---

[2] The Court is aware that in their Sur-Reply, Plaintiffs suggest that they do in fact challenge the validity of the arbitration provision, stating in an aside that the arbitration provision, "in the Plaintiffs' view, is unenforceable for lack of mutuality" (Doc. No. 41 at 4).  Plaintiffs did not present this argument in any formal or detailed manner to the Court in their Response or in oral argument, nor is its resolution necessary to resolving this Motion, so the Court sees no need to rule on it at this time.

(finding that "consistently and actively litigating" a case for two years constituted action completely inconsistent with reliance on the right to arbitrate).

As to the failure to raise arbitration as a defense, Defendant points out that there is no requirement in Fed. R. Civ. P. 8(c)(1) that such a defense be raised—Rule 8(c)(1) requires that a party raise "arbitration and award," not simply the right to arbitrate, as an affirmative defense. (Doc. No. 29-1 at 8.) Although Defendant cites cases from other federal circuits and districts that suggest that only the failure to assert a resolved arbitration leads to waiver, this Court must follow the precedents of the Sixth Circuit. Indeed, in the *Manasher* case cited above, the Sixth Circuit did consider Rule 8(c) to indicate that failure to plead an arbitration provision would generally result in it being deemed waived. *Manasher*, 310 F. App'x at 806 n.3. There, the defendant's failure to plead its right to arbitrate, combined with its active participation in litigation, resulted in an inference of waiver.

The district courts of the Sixth Circuit have followed this lead. In *Lease Group Resources, Inc. v. Detroit Public School Dist*, Case No. 08-11217, 2009 U.S. Dist. LEXIS 31517 (E.D. Mich. April 14, 2009), a judge in the Eastern District of Michigan found that a defendant had waived its arbitration right by failing to state a mandatory arbitration clause as an affirmative defense and failing to raise it with the Court after over eight months of proceedings. There, relying on *Manasher*, the court also noted that failure to plead arbitration could result in waiver, *id.* at *8, and found that this, along with participating in discovery without objection, filing a witness list, and failing to raise arbitration until its motion for summary judgment at the close of discovery indicated that waiver was established, *id.* at 9-10. In *Lewis v. Labor Ready Mid-Atlantic, Inc.*, Case No. 3:08-cv-1085, 2009 U.S. Dist. LEXIS 15081 (M.D. Tenn. Feb. 26, 2009), a court in this district, relying on *Manasher*, held that failure to plead arbitration could

result in waiver, *id.* at *4.  Ultimately, the court found that waiver had not been established because party moving for arbitration did so only four months after the case was initially brought and extensive pretrial litigation had not occurred, resulting in no prejudice to the plaintiff.  *Id.* at 9.

In light of these precedents, this Court does consider Hartmann's failure to raise the arbitration provision contained in the Sourcing Agreement until eight months after the case was instituted as evidence indicating that waiver has occurred.  Further, the Court agrees that Hartmann has "actively litigated" the case to this point, in keeping with the failure to raise the possibility of arbitration, and that its actions have been "completely inconsistent" with reliance on the right to arbitrate.  Hartmann moved for and was granted an extension of time within which to file an Answer.  In the Answer, Hartmann asserted ten affirmative defenses and a counterclaim, indicating its intent not only to defend itself but also to pursue claims against Plaintiffs in this forum.  Instead of invoking the right to arbitrate, Hartmann engaged in a judicial settlement conference and informal efforts to resolve the case.  Hartmann both unilaterally and jointly with Plaintiffs moved for adjustments of the Case Management Order, and both parties served each other with discovery requests, deposition notices, and subpoenas.  These actions further support the inference that Hartmann intended to go forward with the litigation, rather than resort to arbitration.  Hartmann indicates that it informed Plaintiffs that it intended to assert its right to arbitrate a few days before the deadline for discovery responses, and that it would not be submitting substantive responses and Plaintiffs should feel free to do the same.  Plaintiffs, however, had already gathered substantial material in response to Hartmann's requests, and turned them over anyway.  Although at the time of Hartmann's Motion no depositions had been

taken, Plaintiffs indicate that depositions were taken subsequent to the filing of the Motion, and that more have been scheduled.

While Hartmann asserts that parties who were considered to have waived the right to arbitrate in cases like *O.J. Distributing* and *General Star* had allowed litigation to proceed for longer than Hartmann and that circumstances present in those cases (namely, the entry of default judgment) do not exist here (Doc. No. 29-1 at 5), this does not change the Court's conclusion. Defendant's conduct, however, is similar to that described in *Manasher* and *Lease Group Resources*, where parties were considered not to have relied on the right to arbitrate, and is significantly more egregious than that in *Lewis*, where the right was not considered to have been waived. Sixth Circuit precedent does not conflict with, and instead supports, the Court's conclusion that Hartmann actively litigated this case in court for a lengthy period without raising its right to arbitrate, reflecting its non-reliance on that right.

In making this assessment, the Court finds compelling the reasoning applied in *Lease Group Resources*, where the court noted that if the arbitration clause was enforced, "there would be nothing to keep any litigant with an arbitration clause from testing the judicial waters, and to do so as long as he liked . . . and then nullify[] all that has gone before by demanding arbitration." 2009 U.S. Dist. LEXIS 3157, *10-11 (quoting *Uwaydah v. Van Wert County Hospital*, 246 F.Supp.2d 808, 814 (N.D. Ohio 2002)). Indeed, counsel's representations to the Court at the November 18, 2010 hearing were that Hartmann pursued litigation of this matter until settlement talks had failed and Hartmann determined unilaterally that further efforts in litigating this matter would be too costly—a true test of the judicial waters. This approach is inconsistent with reliance on the right to arbitrate, and one that may be wasteful of the Court's resources (if cost-effective for Defendant).

7

### B. *Prejudice to Plaintiffs*

Second, the Court must consider whether Hartmann "has delayed its assertion [of the right to arbitrate] to such an extent that the opposing party incurs actual prejudice." *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 356 (6th Cir. 2003). Plaintiffs argue that they have been required to expend substantial time, effort and funds in participating in proceedings thus far with the assistance of counsel, and that not all of the discovery and deposition material gathered (some from China (Doc. No. 27 at 6, n.2)) will be useful in arbitration. (Doc. No. 41 at 4.) Additionally, Plaintiffs assert that they incurred the cost of sending a representative to Nashville from San Francisco to engage in the judicial settlement conference. (Doc. No. 27 at 3.) Moving the case to Hong Kong to begin arbitration will only push back the resolution of this case beyond the current trial date, April 26, 2010. (Doc. No. 41 at 5.) Defendant asserts that no prejudice will come from granting this motion because Hartmann informed Plaintiffs that they need not provide substantive discovery responses, and any discovery exchanged or effort expended in litigating the case thus far will be useful in arbitration. (Doc. No. 29-1 at 7.) The single trip to Nashville (where Plaintiffs chose to bring this case) by Plaintiffs' representative does not constitute prejudice, and, furthermore, moving the proceedings to Hong Kong is in fact more convenient to Plaintiffs, who are located in Taiwan. *Id.* Arbitration in Hong Kong would in fact be more expedient than continuing to litigate in the present forum. *Id.*

In analyzing whether a party has suffered prejudice through the delay of its opponent in raising an arbitration clause, the Sixth Circuit has considered factors such as the unnecessary delay and expense of litigating a case. *See, e.g.*, *Manasher*, 310 F. App'x at 806; *O.J. Distrib., Inc.*, 340 F.3d at 358. In both of the latter cases, such delay and expense was incurred for approximately a year and was deemed sufficiently prejudicial for the right to arbitrate to be

8

considered waived.  *Id.*  Here, the right to arbitrate was not asserted for eight months, during

which motions were filed, requests for discovery materials were made and responses were

prepared, and a judicial settlement conference was held.  Although certain factors present in

cases like *O.J. Distributing* and *General Star* are not present here (the entry of a default

judgment in each case and pending litigation for almost two years in *General Star*), the Court

still finds that prejudice will come to Plaintiffs if they are now forced to arbitrate in Hong Kong.

While litigating in this court for most of a year, Plaintiffs have participated in scheduling,

requested discovery materials and prepared discovery responses, and negotiated a judicial

settlement conference in this Court.  A considerable amount of time and resources has been spent

in pursuing this matter in court, and Plaintiffs assert that the fruits of their efforts will not be

fully transferrable to an arbitration process abroad that may delay resolution of this case even

further.  In light of these considerations, the Court does find that Defendant has delayed assertion

of the right to arbitrate to the extent that Plaintiffs will suffer actual prejudice.  Although the

Court does not take waiver of the right to arbitrate lightly, it must conclude that Defendant may

not assert the right to arbitrate at this time and must proceed with this case.

## III.  CONCLUSION

For the reasons stated above, Defendant's Motion is **DENIED.**

It is so ORDERED.

Entered this the 30th day of November, 2010.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT

9